## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | (Captioned Action Case No.PJM 08 cv 0921 |
| | ) | pending in the U.S. District Court for the |
| WORLD AVENUE USA, LLC, et al. | ) | District of Maryland) |
| Defendants | ) | |
| | ) | |

## MOVANT WORLD AVENUE USA, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL WILLIAM J. WAGNER'S COMPLIANCE WITH SUBPOENA DUCES TECUM

WORLD AVENUE USA, LLC ("World Avenue"), submits its Reply Memorandum in Support of its Motion to Compel WILLIAM J. WAGNER to comply with a Subpoena Duces Tecum issued to him in this Judicial District in connection with the Maryland Action,[1] and states:

### I.        Introduction.

In the Maryland Action, Plaintiff Beyond Systems, Inc. ("BSI") has brought a claim for in excess of $100 million in damages.[2]  The linchpin of BSI's entitlement to seek relief under Maryland law was that it was an internet service provider residing in Maryland and that the e-mails upon which it is suing were received in Maryland.  BSI claimed to have at least four (4) offices in Maryland.  Through a subpoena, World Avenue discovered that the first "office" was simply a U.P.S. store commanded to forward BSI's mail to where its principal, Paul Wagner,

---

[1] All capitalized terms shall have the meaning ascribed to them in Movant World Avenue USA, LLC's Motion to Compel William J. Wagner's Compliance With Subpoena Duces Tecum.

[2] Wagner disingenuously criticizes World Avenue for aggressively defending itself and serving him and others with subpoenas.  Given the Wagner family's extensive litigation experience, which includes more than two dozen "spam" lawsuits filed all over the United States,  he should have a better understanding of how a company will react when sued for such an amount as sought here.

resided in the District of Columbia.[3]  Through a second subpoena, World Avenue discovered that the second "office" was simply the residence of BSI's CPA.  The CPA now claims that no documents relating to BSI are located that office.[4]

The Subpoena in this case relates to the third and fourth so-called "offices" that supposedly entitle BSI to invoke Maryland law as a resident of Maryland that received the e-mails at issue in Maryland.  These "offices" are a house (the "William Wagner Residence") and a condominium unit (the "William Wagner Condo") owned by William Wagner.  The Subpoena specifically requests documents relating to computer servers purportedly housed at the homes of William Wagner at the William Wagner Residence and the William Wagner Condo.

In his Response, William Wagner attempts to state that he does not control documents and responsive computer materials in his own Residence and Condo.  From his Response, the sole purpose of situating the computer servers in William Wagner's residences is so that his son (Paul Wagner) -- a District of Columbia resident -- can continue the charade that BSI is a "resident" of Maryland and that the e-mails at issue were received in Maryland.  However, William Wagner's protestations that he has no control over the computer servers in his residences are refuted by prior deposition testimony and by documents of record.  Moreover, William Wagner's Response suffers from a deep internal flaw by contending, on one hand, that the Subpoena is "abusive" and

---

[3] *See* Movant World Avenue USA, LLC's Motion to Compel William J. Wagner's Compliance With Subpoena, p. 4.

[4] *See* DE 132 in the Maryland Action.  Amazingly, although the CPA avers that he has no documents relating to BSI at his residence, Paul Wagner has the temerity to aver that the "corporate address" of BSI is "9501 Anchorage Place, Bethesda, MD 20817" -- the address of the CPA. *See* Declaration of Paul Wagner, DE 6-2, ¶ 2.

on the other hand, that the discovery is more appropriately directed to BSI.[5]  In the end, the Court should compel William Wagner to produce the documents and responsive computer information over which he has control.

II.     **William Wagner's Counsel-Crafted Declarations Denying William Wagner's Access to the Relevant Documents Are Contradicted By Prior Sworn Deposition Testimony and Record Evidence.**

William Wagner submits the Declaration of Paul A. Wagner, which asserts that his father, the owner of the William Wagner Residence and the William Wagner Condominium, has no access to two computer servers stationed within his own two residences.  It is established precedent in this Circuit that "'a party's affidavit which contradicts [his or her] own prior deposition testimony should be disregarded'".  *Isse v. American University*, 544 F. Supp.2d 25, 32 (D.D.C. 2008) (*quoting Globalaw Ltd v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 8 (D.D.C. 2006)).  As noted in Plaintiff's Motion to Compel, Paul Wagner previously testified exactly the opposite and admitted that his father had clear access:

> 13     Q.   **And I take it while they were -- while**
> 14     **your parents were living in the house [Sherwood Road Residence], they had**
> 15     **access to the mail servers?**
> 16     A.   **Yes.  Sometimes they would reboot servers**
> 17     **for BSI, so it was actually an advantage to have them**

---

[5] Although William Wagner twice responded in a letter regarding the Subpoena, he asserts in a conclusory manner that he has not been properly served with the Subpoena. *See* Declaration of William John Wagner, DE 6-1, ¶ 4.  A copy of the Affidavit of Service of the Subpoena upon William Wagner is attached hereto as Exhibit "A."  The Affidavit describes a 60 year old male with gray/balding hair served at the William Wagner Condo, which sounds very much like the 71 year old William Wagner residing at the William Wagner Condo.  *Compare* Exhibit "A" *with* Declaration of William John Wagner, DE 6-1, ¶ 2.  In this district, "the return of service by a process server may only be impeached by strong and convincing evidence." *See Miranda v. Contreras*, 754 A.2d 277 (D.C. 2000).  William Wagner's conclusory assertions fail to meet this standard. *See* Declaration of William John Wagner, DE 6-1, ¶ 4 ("It was not formally served on me...").  Likewise, the assertion that the Motion to Compel was not served by a process server is likewise irrelevant as the Court had jurisdiction over William Wagner through the service of the Subpoena. *See* Declaration of William John Wagner, DE 6-1, ¶ 12.

18  **with access to the servers**.
. . .
19     Q.  **Anybody in the [Rockville] condo would have access to**
20  **the servers?**
21     A.  **Yes. Correct**.

*See* Transcript of Paul Wagner, taken September 14, 2009, p. 56: 15-19; p. 59: 12-22; p. 57: 7-18;

p. 60: 1-5, 19-21 (emphasis added), attached as Exhibit 5 to Motion to Compel.

Because William Wagner undoubtedly has possession of the documents per the

September 2009 admission of his son, the Declaration of Paul Wagner should be disregarded.

*See Isse,* 544 F. Supp.2d at 32.

William Wagner's denials of his access to the relevant documents are also belied by

record evidence in the case demonstrating that he worked with the servers at issue. *See* Exhibit 1

to Supplemental Declaration of John L. McManus, attached hereto as Exhibit B.  The e-mails

produced by non-party Keivan Khalachi show that William Wagner on February 26, 2009

"found that somehow the ethernet cable pulled out of the switch while he was moving things

around." *Id.*  The e-mails also show that on February 25, William Wagner was "doing some

electrical work there today [at the William Wagner Residence]" and "will turn the server back on

tomorrow morning." *Id.*

Equally misguided is Paul Wagner's speculation that William Wagner's listing as the

owner of an IP Address belonging to BSI is the result of Verizon's having done a directory

search on the telephone number and listing that customer name.  The fact is that Verizon

produced documents indicating that William Wagner is the customer (*see* Declaration of John L.

McManus filed with Motion to Compel), and Paul Wagner's speculation otherwise is both

meritless and as self-serving as his declaration contradicting his deposition testimony of three

months earlier.

Moreover, although William Wagner claims not to have anything to do with the Servers located in his two residences, he fails to advise this Court why the Server machine names that are bound to the Verizon IP Addresses (71.126.148.132) located at the William Wagner Residence are conveniently named dad.hypertouch.org and bill.hypertouch.org. *See* Exhibit C, attached hereto. Likewise, Wagner fails to explain why two more Server machine names bound to the IP Addresses (66.93.97.101) at the William Wagner Condo have William Wagner's wife's name, (Diane Wagner) namely, mom.hypertouch.org and diane.hypertouch.org. *See* Exhibit C.

Finally, the Court should not credit William Wagner's denials that he has access to documents that simply defy common sense. Wagner claims he has no access to documents that evidence the ownership of the William Wagner Residence. Subpoena, Request 15. Wagner claims he has no documents evidencing the type of property located within the William Wagner Residence. Subpoena, Request 16. Wagner claims he doesn't know and has no documents regarding who has restricted or unrestricted physical access to the William Wagner Residence. Subpoena, Request 17-18. Wagner claims he doesn't have documents relating to the alarm system securing the William Wagner Residence. Subpoena, Request 19. Wagner claims he doesn't have documents showing internet connectivity into his own residences. Subpoena, Request 20.

In this Circuit, it is clear that a non-party must produce documents in that person's "possession, custody or control." *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 55 (D.D.C. 2005). Accordingly, William Wagner should be compelled to produce the responsive documents.

### III.   William Wagner's Reference to Other Subpoenas Is Irrelevant And Misplaced.

In an attempt to divert attention for the clear relevance of a subpoena directed to him as

5

the owner of two properties that house BSI's purported servers, William Wagner points to other

Subpoenas served on other parties in the Maryland Action. Although his criticism is misdirected,

both because William Wagner lacks standing to address subpoenas directed to other non-parties

in a proceeding in which he is not yet a party, and because the Court cannot address or quash a

Subpoena issued by another Court,[6] his criticism is also flawed. Although the gist of his

complaint is that the Subpoena is "abusive," William Wagner failed to object to the Subpoena,

instead falsely claiming in two responsive letters that he had nothing. He therefore waived the

entire argument made in the Response and Declarations. *See* § V, *infra*.

Tellingly, only one of the non-parties mentioned by William Wagner in his Response --

Alton K. Burton -- actually lodged an objection to the subpoena. That objection made by non-

party Alton K. Burton was overruled by the District of Maryland, and Burton was compelled to

comply with the Subpoena. *See* DE 110, in the Maryland Action (Case No. PJM 08 cv 0921).

## IV.   BSI Is Not An Internet Service Provider.

Wagner next claims that BSI is an internet service provider and points to the fact that

"BSI ordered Verizon's business-level Fiber Optic Service ("FiOS") on behalf of BSI at BSI's

Point of Presence" at the William Wagner Residence. *See* Declaration of Paul Wagner, DE 6-2,

¶ 9. However, documents produced by Verizon show that BSI's claimed use of the FIOS service

violates the Terms and Conditions of BSI's contract with Verizon. Those Terms and Conditions

provide:

- "You may not resell the Broadband Service, use it for high-volume purposes, or engage
  in similar activities that constitute resale (commercial or non-commercial), as solely

---

[6] *Dodson Aviation, Inc. v. HLMP Aviation Corp.*, 2009 WL 1532683, at *1, *1 (D. Kan. 2009)
(district court lacks standing to quash a subpoena issued by another district court). Moreover,
since a party may not object or move to quash a subpoena issued to a non-party, *Novak v. Capital
Management & Development Corp.*, 241 F.R.D. 389, 394 (D.D.C. 2007), *a fortiorari*, a non-
party may not object to a subpoena issued to another non-party.

determined by Verizon"

- "You may connect multiple computers/devices within a single home or office location to your Broadband modem and/or router to access the Service, but only through a single Broadband account and a single IP address obtained from Verizon."

- "You may not use the DSL Service to host any type of server personal or commercial in nature."

*See* Supplemental Declaration of John L. McManus, Exhibit 2.

Moreover, the recorded Bylaws governing the William Wagner Condo prohibit the "office" and "Point of Presence" that BSI claims to maintain. The Bylaws specifically prohibit any "industry, business, trade, occupation, or profession of any kind, commercial, religious, educational, or otherwise, designed for profit, altruism, exploration, or otherwise". *See* Supplemental Declaration of John L. McManus, Exhibit 3-4. No request by William Wagner or anyone else for a waiver or variance of these bylaws was produced by the Condominium Association for the William Wagner Condo when Defendant subpoenaed the Condominium Association for any such documents.

## V.   William Wagner Waived The Right to Seek A Protective Order And/Or Sanctions.

As stated above, Wagner's belated objection to the Subpoena and request for sanctions should be denied because he falsely claimed to have no responsive materials instead of objecting or moving for a protective order within the fourteen (14) day period following service of the subpoena as provided by Rule 45(c)(2)(B).   Wagner nevertheless has the temerity to seek sanctions pursuant to Rule 45(c)(1). *See* Opposition, p. 5. That sub-section only protects a non-party from "undue" burden and generally requires a showing of bad faith. *See Alexander v. F.B.I.*, 196 F.R.D. 188, 197 (D.D.C. 1999) (denying Rule 45(c)(1) sanctions where, *inter alia*, a motion to compel on a subpoena was not brought in bad faith). The prior sub-section of Rule 45

-- subsection 45(c)(2)(B) -- provides the timing for such a request for sanctions (within fourteen (14) days of service). *See North American Rescue Products, Inc. v. Bound Tree Medical, LLC*, 2009 WL 4110889, at *1, *14 (S.D. Ohio 2009) (denying a motion for sanctions pursuant to Rule 45(c)(1) where, among other things, the moving party did not object or move for a protective order within fourteen days of service). World Avenue pointed out in its Motion that Wagner had waived the right to object to the Subpoena or raise a motion for protective order by failing to object or move for protective order. *See* Motion, pp. 18-19. Wagner did not respond to World Avenue's argument, therefore implicitly conceding that his request is untimely.

## VI.   Conclusion.

Based upon the foregoing, William Wagner should be compelled to comply with the Subpoena and produce the documents and responsive computer materials requested therein because William Wagner has responsive documentation in his possession, custody or control. Absent a full production of responsive documents, the Court should grant the right to World Avenue to conduct the server search. These documents should include, but not be limited to, the following documents requested in the Subpoena:

- The server log files for the mail servers from July 20, 2004 to present (Subpoena, Schedule A, Request 2(d);

- All server files showing e-mail accounts at beyondsystems.net, hypertouch.net, or any other e-mail account serviced by the servers.  (Subpoena, Schedule A, Request 2(e));

- The documents that evidence the Specifications for the Servers, as defined in the Subpoena. (Subpoena, Schedule A, Request 2(b);

- All email correspondence between BSI and Hypertouch relating to the Servers (Subpoena, Request 11);

- Documents relating to the configuration of e-mail accounts on the Servers (Subpoena, Requests 5-10);

- Documents that evidence the ownership of the William Wagner Residence. (Subpoena, Request 15);

- Documents evidencing the type of property located within the William Wagner Residence. (Subpoena, Request 16);

- Documents regarding who has restricted or unrestricted physical access to the William Wagner Residence. (Subpoena, Request 17-18);

- Documents relating to the alarm system securing the William Wagner Residence. (Subpoena, Request 19); and

- Documents showing internet connectivity into his own residences. (Subpoena, Request 20).

DATED:  December 10, 2009.

/s Sanford M. Saunders, Jr.

Sanford M. Saunders, Jr. (D.C. Bar #376098)
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC  20037
Tel. (202) 331-3100
Fax. (202) 331-3101
saunderss@gtlaw.com

*Counsel for Movant World Avenue USA, LLC*

*Of Counsel:*

Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice in the Maryland Action*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth A. Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice in the Maryland Action*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-147