UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| Plaintiff | * | Case no. 1:09-mc-00557 HHK |
| | * | |
| v. | * | ( USDC-MD Case No. 08-0921PJM) |
| | * | |
| WORLD AVENUE USA, LLC, ET AL. | * | |
| | * | |
| Defendants | * | |

**NON-PARTY WILLIAM WAGNER'S SUPPLEMENTARY OPPOSITION TO WORLD AVENUE U.S.A, LLC'S MOTION TO COMPEL RESPONSES TO ITS SUBPOENA DUCES TECUM, AND RENEWED MOTION FOR SANCTIONS.**

Non-Party William Wagner, by and through counsel Michael S. Rothman, hereby files this supplementary opposition to World Avenue USA, LLC's (WAUSA) Motion to Compel Responses to its Subpoena Duces Tecum issued to Mr. Wagner, as well as a renewed motion for sanctions by Mr. Wagner and against WAUSA for its contumacious conduct in violation of the Court's previous admonitions.  On his behalf, Mr. Wagner states as follows :

**I.  The Prior Ruling.**

On January 4, 2010, this Court denied WAUSA's Motion directed to Compel Responses to its Subpoena Duces Tecum issued to William Wagner, and issued the following instructions to the parties regarding the discovery of information and documents in the control of non-party William Wagner  :

> . . . If Defendants question the veracity of Mr. Wagner's statements, they
> can subpoena him for a deposition under Rule 45(a)(1)(B) and make
> further inquiries into the matter. Otherwise, since Mr. Wagner claims he

> does not have any documents responsive to the subpoena, this Court cannot force him to produce what he does not have in his possession.
>
> As to Mr. Wagner's request for sanctions, this Court will defer its ruling pending Defendants establishing that Mr. Wagner in fact had documents that were responsive to the subpoena duces tecum.

*See* Court's Order, DE 8 at 4.

## II.     Statutes Providing for Sanctions

In its Opposition to the Motion to Compel Responses, Non-Party Dr. Wagner moved for sanctions pursuant to Rule 45(c)(1). *See* DE 6 at 5. This Court reserved ruling on whether such sanctions were appropriate, pending the outcome of the deposition of Dr. Wagner. *See* DE 8 at 4 (above). Now that the deposition of Dr. Wagner has been concluded, it is now more clear than ever that Defendant's actions are deserving of sanction, under the Federal Rules.

Rule 45 of the Federal Rules of Civil Procedure states, in part, the following :

> (c)     Protecting a Person Subject to a Subpoena.
>
> (1)     *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

*See* Fed. R. Civ. P. 45(c)(1).

When the Section was first added in 1991, the Advisory Committee Notes were quite explicit in that the new statute at Rule 45(c)(1) was intended to enlarge the rights of non-parties required to assist the courts. In particular, the Advisory Committee Notes

stated :

> Paragraph (c)(1) gives specific application to the principle stated in Rule 26(g) and specifies liability for earnings lost by a non-party witness as a result of a misuse of the subpoena. No change in existing law is thereby effected. Abuse of a subpoena is an actionable tort, *Board of Ed. v. Farmingdale Classroom Teach. Ass'n,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975), and the duty of the attorney to the non-party is also embodied in Model Rule of Professional Conduct 4.4. The liability of the attorney is correlative to the expanded power of the attorney to issue subpoenas. The liability may include the cost of fees to collect attorneys' fees owed as a result of a breach of this duty.

*See* Fed. R. Civ. P. Rule 45(c)(1)(1991 Committee Notes).

In the 2006, Rule 45 was altered to bring the subpoena rules into conformity with the changes made to other discovery rules, largely related to the storage of electronically stored information. However, the Committee Notes warned that the increased powers of intrusion by use of the subpoena on the non-party required issuing party be constantly on guard for burden or intrusion upon the recipient. And sanctions should be doled out liberally to any party for violations of such rule upon a non-party. "Because testing or sampling may present particular issues of burden or intrusion for the person served with the subpoena, however, *the protective provisions of Rule 45(c) should be enforced with vigilance when such demands are made*." *See* Fed. R. Civ. P. Rule 45(c)(1)(2006 Advisory Committee Notes) (emphasis added).

### III.   No Documents; Harassment

Pursuant to the ruling at DE 8, WAUSA deposed William Wagner, PhD, a retired branch chief of solar physics at NASA now living in Rockville, Maryland, at the offices of Greenberg

Traurig in Washington, D.C. on April 5, 2010.[1]  The deposition ran from 10:30 a.m. to 3:30 p.m. Despite all the prior debate over what documents "must" exist, WAUSA did not ask Dr. Wagner, either directly or indirectly, whether he had possession of the documents so eagerly sought in the motion to compel.  Counsel never asked Dr. Wagner whether he had possession of key documents (e.g., invoices, checks, etc.) related to services from BSI.   Instead, counsel spent the bulk of the deposition tormenting Dr. Wagner on whether he would accept liability for unspecified business activities of his son -- Paul Wagner, the president of BSI and the Plaintiff in the underlying action.

To eliminate any doubt as to whether Dr. Wagner had any responsive documents, Counsel served an additional response stating once again that he has none. (*See* **Exhibit A-4**, attached.)  The deposition was a complete waste of time, except to confirm further a point already known – that Dr. Wagner received computer and Internet-related services from BSI. (*See* **Exhibit A-5**.)

The deposition was part of the same "scorched earth" *in terrorem* campaign employed by WAUSA to harass and intimidate Plaintiff, Beyond Systems, Inc., in the underlying litigation, as described in William Wagner's Opposition Memorandum and exhibits at DE 6.  WAUSA has served document subpoenas on non-parties (more than 50 to date), forced individuals to appear for video depositions if they have had any relationship with BSI or Paul Wagner, its president; and has conducted video inspections of BSI's 3 bases of operations (two in Maryland and one in Washington, D.C.).

This campaign has included subpoenas served not only on Paul Wagner's father, but on his siblings (including an attorney, a physician and a PhD candidate in engineering) and his

---

[1] While the transcript of the deposition uses the caption of the Maryland case, Mr. Wagner appeared for the

siblings' spouses (who, likewise, include professionals with busy lives), as well as BSI's accountant (who also serves as its resident agent in Maryland, and whose office is listed as BSI's "principal office" in Maryland, in its annual Maryland registration.)  The accountant was also subjected to a video inspection of his professional offices and a video deposition at Greenberg's offices. This campaign has been extremely disruptive to friends and family, as well as those for whom BSI has provided services.

It would appear that WAUSA has tasked its researchers with compiling a list of anyone who has ever dealt with BSI or the Wagners, to be sent subpoenas.  This campaign has included the thesis advisor for Paul Wagner's brother, James Joseph Wagner ("Joe"), at Stanford University, where Joe is a PhD candidate engaged in the final steps toward his degree, including a defense of his thesis in June, 2010. The intent to harass, and to tarnish relationships with friends and family, is clear. The intent to intimidate the witnesses is also clear.  (*See, e.g.*, **Exhibit A-5** (William Wagner deposition) at 208 - 209, questions on whether Mr. Wagner would condone "illegal activity" by his son operating computers from the father's residence, without stating any basis for such insinuation.)

The inquiry in the deposition, which was to have explored the documents sought in the subpoena, included the following, obviously intended to intimidate and harass :
at 50:

> Q So it's -- it's of no intr- -- you don't
> 6 have much interest if there's a business being run out
> 7 of your home in Silver Spring?
> 8 MR. RING: Objection; asked and answered.
> 9 You may answer.

At 51:

---

deposition under force of the subpoena and ruling in the instant enforcement proceeding.

Q Do you have an understanding with your son Paul as to who will pay your legal expenses in connection with your having to appear for a deposition in the case between Beyond Systems and World Avenue?

At 51-52:

Q Have you had any discussion with your son Paul as to who would pay the legal expenses if there is litigation regarding the operation of a commercial business out of your Silver Spring home?

MR. RING: Objection.
You may answer.

THE WITNESS: We've not had any conversation like that.

BY MR. SAUNDERS:
Q So your son Paul hasn't told you that there's the possibility that you could incur legal expenses as a result of him running a commercial enterprise out of your home in Silver Spring?

MR. RING: Objection.
You may answer.

THE WITNESS: That is true. We have not had a conversation like that.

At 204:

Q So you were perfectly content to allow that equipment to be operated in your home in -- in the Rockville condo with you having no idea what it's being used for?

At 205:

Q You were perfectly content to have that equipment operate in your home, although you have no idea what purpose it's for?

At 206:

And, Dr. Wagner, are - are you perfectly
comfortable - you'll accept personal responsibility
for Paul and BSI's actions in connection with the use
of the equipment in your home?

At 206-07:

Are you perfectly willing to accept personal responsibility
for Paul's actions in operating equipment in your
Silver Spring home?

At 208-09:

Q You allowed your son Paul to run a
commercial business out of your home in Silver
Spring --
...
Q -- for approximately 10 years --
...
Q -. without knowing what he was doing. So
I'm asking you whether you're willing to accept
responsibility.

A No. That's a whole bunch of things that --
I allowed Paul to do what he wants over there in that
of-- in that residence. Now, I don't know what he
was doing or what he's - all the other stuff in your
question.

Q And if there are legal ramifications from
what he is doing, and your home was used to facilitate
that activity, are you willing to accept
responsibility for his actions?

At 211:

MR: SAUNDERS: ...
Dr. Wagner's testified he's willing to accept what his
son does without knowing anything about it.

At 212:

Q Dr. Wagner --
A You know, If the -- we get hit by a meteor
and -- you going to blame me 'cause I'm a solar

physicist or something like that?

…

Q. No, sir. I'm just asking, if it turns out.
A. Well, come and ask me when it turns out. Then I'll have an answer for you.

Q Because up until today, you've made no effort to find out what your son was doing in your house, did you?

A Is that a question?

Q Yes.

MR. RING: Objection; asked and answered. Covered on direct.

THE WITNESS: That's right. I haven't.

BY MR. SAUNDERS:

Q Are you answering Mr. Ring's -- so I'm asking you: Are you prepared to lake legal responsibility for what he has done?

At 213:

```
 6   Q   Have you discussed with your son Paul the
 7   possibility that there could be legal liability to you
 8   based upon his actions in running a commercial
 9   enterprise out of your home?
10  MR. RING:  Objection; asked and answered.
11   Now, this is I think the fourth or fifth time you've
12   asked this question of the witness between direct and
13   cross.
14  MR. SAUNDERS:  No, it's not.
15  MR. RING:  And -- and -- I think it is.
16   And based on that, I'm going to instruct him not to
17   answer.
```

See **Exhibit A-5** (deposition of Dr. William Wagner)

The deposition never reached the issue of Dr. Wagner's possession of the documents sought.   Instead, it served as a forum for harassment.

The motivation for the current scorched earth campaign by WAUSA appears to be the following: BSI received documents from the Florida Attorney General via Florida's Sunshine Act, its equivalent of FOIA, and attached some of those documents to filings in the Maryland action concerning Defendants' spam-based marketing campaigns.  As alleged in the original complaint, and more fully in the second amended complaint that remains pending, Defendant Niuniu Ji has created a large and very profitable Internet marketing empire based on unsolicited commercial email ("spam") that includes approximately 20 interrelated corporate entities and literally hundreds, if not thousands, of falsely registered domain names and IP addresses.  The newly filed documents support those allegations in glowing detail.

World Avenue thrives on litigation, having finessed its way through at least two state Attorneys General actions (Florida, settled for $1 million; and Texas, for $800,000; mere incidental business expenses in relation to revenues calculated in the Florida attorney general documents), inquiries from attorneys general in Pennsylvania, Ohio, Wisconsin, Maryland, Idaho and other states, and several private anti-spam or consumer protection actions.  After the Texas settlement World Avenue outrageously advertised that Texas found the operation "Outstanding," which provoked a second investigation by Texas for misrepresentation of the nature of the first action.  *See* **Exhibit A-6** (Texas Attorney General documents), attached.)   World Avenue and its "sister companies" routinely enjoy ratings of "D" and "F" with the Better Business Bureau of South Florida, a matter of public record.   Their brazen and arrogant attitude pervades their operations from the top down, and has now been felt by non-party William Wagner.

In addition to the intimidating and unnerving interrogation before a video camera in the downtown, Washington, D.C. offices of Greenberg Traurig, William Wagner was forced to suffer the indignity of having opposing counsel (two attorneys) and a videographer inspect specified areas of his current residence in Rockville, and his prior residence in Silver Spring, Maryland.  These inspections were absurdly detailed:  the videographer crawling on the floor and squeezing into corners with the video camera to capture every nook and cranny; turning the camera backward against the wall to view the serial numbers, plugs, wires, jacks and fittings, in addition to the larger components.  (*See* **Exhibit A-3**, CONFIDENTIAL photographs of inspections, attached.)

### III.  Conclusion.

For all of the above reasons, William Wagner requests an award of attorneys' fees and expenses, including transcript costs, associated with his deposition and his defense against the instant motion to compel, and requests leave to submit a separate filing of affidavits and statement of time and costs in support thereof, should the Court rule in his favor.

Respectfully submitted :

_____/s/_____
Michael S. Rothman
USDC DC Bar No. 467479
401 E. Jefferson Street, Suite 201
Rockville, MD 20850
Telephone: (301) 251-9660
Facsimile: (301) 251-9610
mike@mikerothman.com

Of Counsel :

   /s/
Stephen H. Ring
**STEPHEN H. RING, P.C.**
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
Telephone: 301-563-9249
Facsimile: 301-563-9639

*Attorneys for Non-Party William Wagner*

## Certificate of Service

I certify that a copy of the foregoing documents was served on the date of ECF filing, via the ECF system, on all counsel of record.

   /s/
Michael S. Rothman

## List of Exhibits

A-1 – Declaration of Stephen H. Ring as to emails, photographs, documents

A-2 – Emails between counsel, March 31, April 1, 2010

A-3 – Photographs from inspections on April 1, April 2, 2010  - CONFIDENTIAL

A-4 – Supplemental Response of William Wagner in MD action

A-5 - Transcript of Deposition of William Wagner

A-6 – Texas Attorney General documents