IN THE U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WORLD AVENUE USA, LLC, et al. )<br>  )<br>  Petitioner,  )<br>  )<br>  v.  )<br>  )<br>  WILLIAM J. WAGNER,  )<br>  )<br>  Respondent.  )<br> _____ ) | Miscellaneous No. 09-557 (HHK/AK) |

**PETITIONER WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION AND APPLICATION AS TO AMOUNT OF ATTORNEYS' FEES**

Petitioner WORLD AVENUE USA, LLC ("WAUSA") hereby submits its Memorandum of Points and Authorities in Support of its Motion and Application As to Amount of Attorneys' Fees awarded by this Court against Non-Party WILLIAM J. WAGNER ("Mr. Wagner") in its Order dated July 30, 2010.

### I.  **Introduction.**

On July 30, 2010, this Court issued its Memorandum Order denying Mr. Wagner's Supplementary Opposition to World Avenue U.S.A., LLC's Motion to Compel Responses to Its Subpoena Duces Tecum, and Renewed Motion for Sanctions ("Motion for Sanctions") against WAUSA. *See* DE 21. The Court ordered WAUSA to "submit costs and reasonable attorneys' fees associated with this Renewed Motion for Sanction for review by this Court." *Id*. The Court's Order was based on the following finding:

> Given the revelation of responsive documents during the deposition, Respondent's repeated failure to disclose their existence, and his refusal even now to adequately excuse that failure, this Court finds it appropriate to award Petitioner costs and attorneys' fees related to responding to this instant renewed motion for sanctions.

*See* DE 21, p. 9.

Petitioner WAUSA incurred $20,667.40 in attorneys' fees in connection with the defense of the Motion for Sanctions, review of the Reply Memorandum submitted by Mr. Wagner, and preparation of a Sur-Reply necessitated by the new information and assertions contained in the Reply. The attorneys' fees are detailed in the Declaration of Sanford M. Saunders, Jr. *See* Exhibit 1. The costs of defense of the Motion for Sanctions were brought on by the very same conduct that prompted the Court to order sanctions against Mr. Wagner.

The same recalcitrance that caused WAUSA to incur $20,667.40 in attorneys' fees continues to this very day: **Mr. Wagner still has not produced the checks that are the subject of the subpoena issued to him**.

>   II.   **WAUSA Is Entitled To An Award of $20,667.40 In Reasonable Attorneys' Fees Against Respondent.**

WAUSA bears the burden to prove the reasonableness of its fee submission. In "order to calculate a fee award, '[the court] must determine: (1) the reasonableness of the hourly rate charged; and (2) the reasonableness of the hours expended on the litigation.'" *Electronic Transaction Sys. Corp. v. Prodigy Partner Ltd., Inc.*, 2009 WL 3273920, at *1, *2 (D.D.C. October 9, 2009) (adopting Order of Magistrate Judge Kay) *quoting Woodland v. Viacom*, 255 F.R.D. 278, 280-81 (D.D.C. 2008)).

>   A.   **The Hourly Rates Sought Are Reasonable In The District of Columbia Legal Market.**
>
>     1.   **The Averment In The Saunders Declaration That The Hourly Rates Billed In This Matter Are The "Customary" Rates Charged For These Attorneys and Paralegal Creates A Presumption That Such Rates Are Reasonable.**

As detailed in the Declaration of Sanford M. Saunders, Jr., Mr. Saunders spent 13.4 hours at the hourly rate of $625 per hour. Saunders Declaration, ¶ 4. Nicoleta Burlacu spent 39 hours

at the rate of $290 per hour.  *Id.*, ¶ 4.  Jozef S. Przygrodzki spent 3.2 hours at the rate of $220 per hour.  *Id.*, ¶ 4.  All of these hourly rates are reasonable, and well-supported in the Washington, D.C. legal market.

As this Court recognized in *Electronic Transaction Sys. Corp. v. Prodigy Partner Ltd., Inc.*, 2009 WL 3273920, at *1, *2 (D.D.C. October 9, 2009):  "This Circuit holds that "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" (*quoting Woodland v. Viacom*, 255 F.R.D. 278, 280-81 (D.D.C. 2008)).  This presumption exists because "'the rate that [a firm] charges its clients is the market rate.'"  *Electronic Transaction*, 2009 WL 3273920, at *2 (*quoting Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)).

### 2. The Reasonableness Of The Hourly Rates Is Supported By the Laffey Matrix and The Decision Of This Court in *Electronic Transaction*.

Courts in this District have adopted the Laffey Matrix published by the U.S. Attorney's Office for the District of Columbia as a *reference point* for reasonable hourly rates in the District of Columbia.  *Electronic Transaction*, 2009 WL 3273920, at *2; *see* http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html, attached as Exhibit 2.  "Using the Laffey Matrix as a guide, the Court must then increase or decrease the rates to arrive at a final fee award that reflects 'the characteristics of the particular case (and counsel) for which the award is sought.'"  *Electronic Transaction*, 2009 WL 3273920, at *2 (*quoting Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 361 (D.D.C. 1983)).

In *Electronic Transaction*, 2009 WL 3273920, at *2, this Court entered a fee award of $98,765.17 based on a fee submission by attorneys from Williams & Connolly.  Although the

rates that this Court found reasonable did not expressly appear in the *Electronic Transaction* opinion, this Court can take judicial notice of its own records of the submissions made by the Williams & Connolly firm. *See* Exhibit 3 (Composite Exhibit of submission of Williams & Connolly attorneys filed in *Electronic Transaction Sys. Corp. v. Prodigy Partners Ltd., Inc.*, Civil Action No. 08-1610 (RWR), District of Columbia, at DE 19-2, p. 3 of 5).

This Court's judicial records reflect that the senior partner (admitted to the bar in 1976[1]) in *Electronic Transaction* billed at an hourly rate of $740 and $760 per hour, respectively, for the years covered by the case. *See* Composite Exhibit 3, DE 19-2, p. 3 of 5. The records further reflect that another partner (who graduated law school in 1997[2]) billed at an hourly rate of $525 and $535 per hour, respectively, for the years covered by the case. The records further reflect that an associate (who graduated law school in 2004) billed at a rate of $375 and $410, respectively for the years covered by the case. *See* Composite Exhibit 3, DE 19-3, ¶ 2. Finally, a senior researcher billed at $260 per hour, a researcher billed at $225 per hour, and two paralegals billed at $180 to $175 per hour. *See* Composite Exhibit 3. These were the hourly rates that this Court found to be "reasonable" in its 2009 decision. *Electronic Transaction*, 2009 WL 3273920, at *2 ("Accordingly, the Court finds that the rates that Williams & Connolly charged its client were reasonable").

Given the foregoing, the hourly rates charged for Mr. Saunders and Ms. Burlacu are reasonable in this District. Mr. Saunders, who has more than 27 years of experience, has been recognized in Chambers and Partners' *2009 Chambers USA Guide* as one of the leading litigators in the country. Most recently 2010, Mr. Saunders was recognized for his litigation expertise in

---

[1] *See* http://www.martindale.com/Barry-Simon/378624-lawyer.htm (Martindale-Hubbell attorney profile).

[2] *See* http://www.wc.com/aromain (Williams & Connolly attorney profile).

the 2010 edition of *Legal 500 United States*, an internationally-recognized client referral guide. Mr. Saunders, a 1983 law school graduate, billed at $135 per hour *less* than the senior partner and 1976 law school graduate whose hourly rate was approved by this Court in *Electronic Transaction*. Mr. Saunders billed at a rate just $90 more than the partner and 1997 law school graduate whose hourly rate was approved in *Electronic Transaction*, despite having 14 more years -- or more than *double* -- his experience.

For her part, Ms. Burlacu is a 2000 law school graduate, who, after completing her Master's in 2001, obtained an LL.M in International and Comparative Law in 2006 from The George Washington University Law School. Ms. Burlacu practiced as a foreign attorney with Greenberg Traurig, LLP, from 2006 until January 2008, when she was admitted to the Bar of New York. Ms. Burlacu has ten years of experience practicing foreign and international law, including working as a Staff Attorney for the U.S. Department of Justice, Criminal Division, Office of Overseas Prosecutorial Development, Assistance and Training. Ms. Burlacu has been practicing in private practice since her New York bar admission in January 2008. Moreover, Ms. Burlacu was particularly suited to work on the opposition to the Motion for Sanctions. Ms. Burlacu has been working on the underlying litigation styled *Beyond Systems, Inc. v. World Avenue USA, LLC*, pending in the District of Maryland for over two years, and is admitted *pro hac vice* in that case.

The Laffey Matrix judges attorney experience by the number of years since law school. *See* Exhibit 2 ("The column headed "Experience" refers to the years following the attorney's graduation from law school"). Since Ms. Burlacu graduated with her Juris Doctorate during the year 2000, and the pertinent hourly rate for an attorney with ten years' experience on the Laffey Matrix is $45 above Ms. Burlacu's $290 hourly rate, *a fortiorari*, Ms. Burlacu's hourly rate is

5

reasonable. Moreover, even if experience were judged by years in private practice, Ms. Burlacu's $290 hourly rate is only $60 above the Laffey Matrix for an attorney with three years' experience. Further, Ms. Burlacu's hourly rate is $120 *below* the 2004 law school graduate whose hourly rate this Court found to be reasonable in *Electronic Transaction*.

Likewise, although the $220 hourly rate for Mr. Przygrodzki is $85 above the Laffey Matrix, it is well within the range of the paralegals and researchers in *Electronic Transaction* who billed within the range of $175 to $260 per hour. Mr. Przgrodzki is a February 2010 graduate *cum laude* of Georgetown University Law School, and was admitted to the Maryland bar in June 2010. Mr. Przygrodzki has worked with Greenberg Traurig, LLP for 6 years, has fifteen total years of experience as a paralegal, and has been involved in the underlying litigation for the past two years.

      **3.**      **The NATIONAL LAW JOURNAL's Annual Survey of Billing Rates Attests To The Reasonableness of The Hourly Billing Rates At Issue Here.**

The reasonableness of the hourly billing rates of Mr. Saunders and Ms. Burlacu is also supported by the National Law Journal's annual survey of billing rates. *See* Leigh Jones, *Law Firm Fees Defy Gravity*, NATIONAL LAW JOURNAL (Dec. 8, 2008), attached as Exhibit 4. For example, billing rates at Steptoe & Johnson, LLP based in Washington, D.C. -- a firm that Mr. Wagner's son's company in the underlying litigation (Beyond Systems, Inc.) has retained in connection with certain of its litigation in the District of Maryland -- has billing rates at $350 to $895 for partners and $210 to $685 for associates. *Id.*, p. S-4. The billing rates at Arent Fox based in Washington, D.C., range from $410 to $710 for partners and $260 to $465 for associates. *Id.*, p. S. 2. The billing rates at Dickstein Shapiro based in Washington, D.C., range from $475 to $895 for partners and $250 to $475 for associates. *Id.*, p. S. 2. The billing rates at

Patton Boggs based in Washington, D.C., range from $360 to $990 for partners and $244 to $535. *Id.*, p. S-4.

The reasonableness of Ms. Burlacu's hourly rate is even more pronounced when compared with the hourly rates charged for her peer group (based on years of private practice of domestic law). Hogan & Hartson based in Washington, D.C., bills out third year associates at $360 per hour. *Id.*, p. S-5. Dickstein Shapiro bills out third year associates at $350 to $395 per hour. *Id.*, p. S-5. Steptoe & Johnson, LLP bills out third year associates at $355 per hour. *Id.*, p. S-6. Patton Boggs bills out third year associates at $350 per hour. *Id.*, p. S-6.

      **B.**      **The Hours Expended Were Reasonable.**

           **1.**      **WAUSA Has Met Its Burden To Show Reasonableness.**

WAUSA must also "submit evidence that justifies the number of hours expended in connection with the litigation." *Electronic Transaction*, 2009 WL 3273920, at *2. This evidence "'must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Id.* (*quoting Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). For example, in *Electronic Transaction*, the moving party satisfied its burden by submitting an Affidavit of one of the attorneys and a chart that detailed "how the firm utilized each hour connected to the litigation of this matter." *Electronic Transaction*, 2009 WL 3273920, at *2.

"On the issue of reasonableness, the plaintiff must submit supporting documentation with the motion for attorney's fees," "providing sufficient detail so that the Court can determine '*with a high degree of certainty*' that the hours billed were actually and reasonably expended, that the hourly rate charged was reasonable, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing." *Heard v. District of Columbia*, 2006 WL

2568013, at *1, *7 (D.D.C. 2006) (*quoting Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004)) (*in turn quoting In re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989)).  "At a minimum, the plaintiff must provide some information about the attorneys' billing practices and hourly rate, the attorneys' skill and experience (including the number of years that counsel has practiced law), the nature of counsel's practice as it relates to this kind of litigation, and the prevailing market rates in the relevant community."  *Heard*, 2006 WL 2568013, at *6 (*quoting Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  Once this information has been provided, "there is a presumption that the number of hours billed and the hourly rate are reasonable."  *Heard*, 2006 WL 2568013, at *6.

In forming its judgment about reasonableness, it is not necessary for the Court to form a judgment about each time entry and decide what each entry is worth.  *See Holbrook*, 305 F. Supp.2d at 46 ("Moreover, Defendant's objections are simply conclusory assertions regarding the amount of time that Defendant thinks Plaintiffs' counsel 'should have spent' on certain documents and litigation tasks.  'It is neither practical nor desirable to expect the trial court judge to [review] each paper ... to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours'") (*quoting Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980)).

WAUSA has satisfied its burden to show the reasonableness of the hours expended in opposing Mr. Wagner's Motion for Sanctions and in drafting the Sur-Reply to the new averments contained in the Reply Memorandum filed by Mr. Wagner.  WAUSA has submitted the Declaration of Sanford M. Saunders, Jr. attesting to the reasonableness of the attorneys' fees incurred.  *See* Exhibit 1.  WAUSA has submitted a Chart detailing exactly what the attorneys did for each hour or portion thereof for which recovery is sought.  *See* Exhibit 5.  Greenberg Traurig,

L.L.P. maintains contemporaneous time records of hours (or portions thereof) dedicated toward particular matters based on six minute increments. WAUSA has also submitted redacted photocopies of the bills for the work performed reflecting the actual timekeepers, task descriptions, hours or portions of hours, and sub-totals for time worked. *See* Exhibit 6.[3] This evidence more than demonstrates reasonableness and creates a presumption that the hours expended are reasonable. *See Holbrook v. District of Columbia*, 305 F. Supp.2d 41, 45-46 (D.D.C. 2004) ("Plaintiffs have demonstrated that the number of hours expended on particular tasks was reasonable. Plaintiffs' counsel submitted time records that show the specific tasks she performed, the hours she expended on each task (calculated in tenth-hour segments), and the date each task was performed. She also submitted a detailed affidavit explaining the hours claimed for each task identified by DCPS as unreasonable in its Disputed Items List").

### 2. The Complexity of The Matter Required Intensive and Extensive Effort.

Counsel's time and effort spent in responding to Motion for Sanctions was reasonable for several reasons. First, the Motion for Sanctions was very fact-intensive and as, WAUSA demonstrated, Mr. Wagner failed to properly disclose numerous material facts. Saunders Declaration, ¶ 7(1). Thus, counsel had to review court papers, previous discovery materials and deposition records that occurred months earlier. *Id*. Additionally, the underlying litigation is more then two years old and in order for this Court to properly assess the facts, WAUSA had to outline the relevant facts which also required time and effort. *Id*. Second, Mr. Wagner failed to disclose the relevant case law and to cite any authorities in support of his arguments. *Id*.

---

[3] Exhibit 5 is a redacted electronic copy of the bills for the work performed with two important exceptions. In the Columns of the bills at the far right, the undersigned have caused to be manually inserted a sub-total of hours (or portions thereof) for the work performed and a sub-total of monies due for the work performed. This is necessary because the time entries necessarily include work performed on other tasks unrelated to the Motion for Sanctions, which have been excluded from the time entries, the sub-total of hours, and the sub-total of monies due for the work performed.

Therefore, the research burden shifted to WAUSA's counsel to outline the standards applicable to such a motion for sanctions. Third, Mr. Wagner failed to meet and confer before filing his Motion for Sanctions as Local Rule 7 requires and to narrow the issues of disagreement. Moreover, even after Mr. Saunders brought to the attention of Mr. Wagner's counsel that the Motion for Sanctions he filed was procedurally and substantively flawed and offered him the chance to retract the Motion, Mr. Wagner's counsel ignored it. The fees and costs associated with the Motion for Sanctions could have been avoided at that time. Fourth, Mr. Wagner's filing created a procedural quagmire that had to be addressed by communications with the Clerk of Court. Mr. Wagner filed certain papers under seal in this Court without filing a motion to file under seal. Mr. Wagner also filed a Supplemental Opposition to Petitioner's Motion to Compel five months after the Court already ruled upon Petitioner's Motion to Compel. These and other actions required clarifications from the Clerk of Court. Finally, Mr. Wagner's failure to provide WAUSA a complete copy of his filing, with the pictures of the inspections attached also required additional time spent by counsel in requesting those copies and figuring out what they were, and describing for the Court the inspections of Mr. Wagner's residences in detail.

Following the filing of the initial Opposition, Mr. Wagner filed a Reply Memorandum that submitted new, previously-undisclosed facts to the Court for consideration. This required WAUSA to not only research the applicable standard for the filing of a Sur-Reply brief, but to prepare and file a Motion for leave to file a Sur-Reply brief, as well as the Sur-Reply brief itself. The Sur-Reply brief centered on the fact that Mr. Wagner's representation to this District Court, namely, that the deposition was burdensome upon him, was contradicted in a Memorandum subsequently filed in the underlying case in the District of Maryland on July 19, 2010 by the same attorneys who also represented Beyond Systems, Inc. *See* DE 18, Exhibit 1. That

Memorandum filed in the District of Maryland claimed that the inspections of Mr. Wagner's residences were burdensome and the deposition was "less intrusive." *Id*. The Sur-Reply also pointed out that, at the same time that Mr. Wagner denied that he had any responsive documents in December of 2009, he had generated a responsive document just one month prior to his representation. *Id.*, Exhibit 1, pp. 2-3.

### C. WAUSA Exercised "Billing Judgment."

The standards also require WAUSA to exercise "billing judgment", which is defined as follows:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*See Heard v. District of Columbia*, 2006 WL 2568013, at *1, *7 (D.D.C. 2006) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 464 (1983)).

WAUSA has exercised the requisite "billing judgment." WAUSA has reduced the overall bill for these entries by several hundred dollars. WAUSA has further reduced the individual entries for these bills to exclude work performed on other unrelated tasks. Although WAUSA has four attorneys of record in this case, only two are included in these fee submission. For the work that was performed, WAUSA utilized primarily an associate, Ms. Burlacu, and a paralegal, Mr. Przygrodzki, to perform the relevant services. Saunders Declaration, ¶ 7(2).

### III. Conclusion.

Mr. Wagner's dogged refusal to comply with a subpoena issued to him during 2009 has culminated in an award of sanctions against him. Despite being sanctioned, Mr. Wagner has still -- to this very day -- failed to comply with the subpoena by producing the documents identified in this Court's Order. Mr. Wagner's current intransigence is a mere continuation of the type of conduct that multiplied the costs of addressing his misplaced Motion for Sanctions. Having caused those attorneys' fees to be incurred, Mr. Wagner cannot now be heard to complain of the quality of the advocacy that led to his being sanctioned. Accordingly, this Court should issue an Order awarding $20,667.40 in attorneys' fees, plus post-judgment interest, against him. *See* 28 U.S.C. 1961(a); *Holbrook*, 305 F. Supp.2d at 48.

**WHEREFORE**, WORLD AVENUE USA, LLC respectfully requests entry of an Order awarding $20,667.40 in attorneys' fees against Respondent WILLIAM J. WAGNER to be paid in 14 days, with interest accruing at the statutory rate under 28 U.S.C. § 1961(a) on all unpaid amounts until the same are paid, and for such other and further relief as this Court deems just and appropriate.

Dated: August 13, 2010

Respectfully submitted,
*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

_____/s/_____
Sanford M. Saunders, Jr., Esq.
saunderss@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone: 202-331-3100
Facsimile: 202-331-3101