IN THE U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

WORLD AVENUE USA, LLC, et al. )
)
    Petitioner, )
    v. )    Miscellaneous No. 09-557 (HHK/AK)
WILLIAM J. WAGNER, )
)
    Respondent. )
_____ )

## WORLD AVENUE USA, LLC'S REPLY IN SUPPORT OF ITS MOTION AND APPLICATION AS TO AMOUNT OF ATTORNEYS' FEES

Pursuant to Local Civil Rules 7(d), 72.2(b), and 54.2 and Rule 54 of the Federal Rules of Civil Procedure, Petitioner WORLD AVENUE USA, LLC ("WAUSA"), by and through undersigned counsel, hereby files its Reply in Support of its Motion and Application As to Amount of Attorneys' Fees awarded by this Court against Respondent WILLIAM J. WAGNER ("Mr. Wagner") in its Memorandum Order dated July 30, 2010. Mr. Wagner's Opposition [DE 24] is devoid of any evidence demonstrating that WAUSA's attorneys' fees are unreasonable, and fails to provide any supporting evidence to rebut the presumption of reasonableness of the attorneys' fees incurred by WAUSA.

The Opposition provides no justification for not awarding fees and costs in the manner set forth in WAUSA's Application. Rather, Mr. Wagner asserts in conclusory fashion that the fees incurred are "patently obscene" and "excessive," and that "there are a large number of very competent attorneys in this city who could have accomplished this task at a rate approaching half of the rate assigned by Petitioner." DE 24 at pp. 2, 6. These bold assertions allegedly are supported by Declaration of Michael S. Rothman ("Rothman Decl."). Rothman Decl. at ¶7. However, Mr. Rothman does not provide any specifics as to whether the "very competent

attorneys" to which he refers are of comparable skill, experience and reputation as WAUSA's attorneys.

Further, just as in his Renewed Motion for Sanctions [DE 9] and his Objections to Magistrate Judge Day's Memorandum Order [DE 23], Mr. Wagner's Opposition is devoid of any legal authority or case law supporting his arguments. Specifically, although Mr. Wagner states twice that "the Court has failed to consider the Federal Lodestar Rate as an alternative source of what a reasonable hourly rate for attorney's fees would be," Mr. Wagner does not provide any authority that this is the sole methodology applied in this District for calculation of attorneys' fees in a non-contingency case and absent a fee shifting statute. DE 24 at pp. 6, 8. Moreover, Mr. Wagner fails to state which Lodestar rates he is referring to, and never served a copy of his Exhibit B on WAUSA or the Court through CM/ECF.[1] For these reasons and as detailed below, WAUSA's Motion and Application should be granted.

## I. ARGUMENT

### A. MR. WAGNER FAILED TO REBUT THE PRESUMPTION THAT THE NUMBER OF HOURS BILLED AND THE HOURLY RATES OF WAUSA'S ATTORNEYS ARE REASONABLE

#### 1. The Time Spent By WAUSA's Counsel Was Reasonable

##### a. The Case Was Appropriately Staffed.

Mr. Wagner argues that WAUSA's "costs and attorneys fees associated with the Renewed Motion for Sanctions in the amount of $20,667.40 is "patently obscene" and that WAUSA's "argument on complexity and 'extensive effort' cannot pass the laugh test." DE 24 at pp. 3, 8. Mr. Wagner does not provide support for these and similar insulting contentions.

---

[1] Mr. Wagner's tactic of shrouding his arguments in mystery and making conclusory statements contrary to controlling law does not change the standard used in this district for evaluating the reasonableness of attorneys' fees. In fact, under the Lodestar method, WAUSA would be entitled to an amount greater than $20,667.40. *See infra* at pp. 10-12.

2

WAUSA, which was defending itself from Mr. Wagner's attempt to impose sanctions on it, has more than satisfied the burden of showing the reasonableness of hours expended. Mr. Wagner speculates whereas WAUSA has provided evidence demonstrating the number of hours spent, creating a presumption that the hours expended were reasonable. *See Holbrook v. District of Columbia*, 305 F. Supp.2d 41, 45-46 (D.D.C. 2004) ("Plaintiffs have demonstrated the number of hours expended on particular tasks was reasonable. Plaintiffs' counsel submitted time records that show the specific tasks she performed, the hours she expended on each task (calculated in tenth-hour segments), and the date each task was performed. She also submitted a detailed affidavit explaining the hours claimed for each task identified by DCPS as unreasonable in its Disputed Items List").

Mr. Wagner has no Disputed Items List. Rather, Mr. Wagner just complains that WAUSA "grossly overstaffed the present matter," a contention as inappropriate as it is mistaken. Two attorneys worked on this briefing. The majority of the time, in excess of 70%, was spent by the most junior attorney. Clerical non-attorney work was performed by a paralegal. *See* DE 22, Saunders Decl. at ¶4. Specifically, as detailed in the Declaration of Sanford M. Saunders, Jr. ("Saunders Decl."), Mr. Saunders spent 13.4 hours (at the hourly rate of $625 per hour), Nicoleta Burlacu spent 39 hours (at the rate of $290 per hour) and Jozef S. Przygrodzki spent 3.2 hours (at the rate of $220 per hour). *Id.*, ¶ 4.

### b.   The Case Was Not Filed In The "Wrong Jurisdiction."

Mr. Wagner's argument that this matter was "intentionally complicated ... by filing [it] in the wrong jurisdiction" is a back door to rearguing an improper and long-waived venue objection to Magistrate Judge Kay's Memorandum Order. DE 23 at pp. 15-17. As WAUSA demonstrated, Mr. Wagner's argument is frivolous. Mr. Wagner made no venue objection when

the Court entered its Order denying WAUSA's Motion to Compel. Mr. Wagner similarly had no objection to jurisdiction when he decided on his own initiative to file a Renewed Motion for Sanctions against WAUSA five (5) months after the Court entered its Order denying WAUSA's Motion to Compel. *Id.* at p. 16. In reality, this matter has not been complicated by anything except Mr. Wagner's continuous and unfounded refusal, ***through and including this very day, to produce the checks that are the subject of the subpoena issued to him.***

It is uncontested -- since Mr. Wagner never addresses it -- that his failure to simply comply with the subpoena and subsequent lack of candor with the Court during the briefing process imposed additional burdens and associated expense on WAUSA. Saunders Decl., ¶ 7(1).

The reality is that WAUSA's Opposition primarily consisted of explaining the testimony showing that Mr. Wagner withheld responsive documents, changed his story mid-stream during deposition, the law applicable to that behavior, and the law on legal standards applicable to the sanctions Mr. Wagner originally asked to have imposed on WAUSA. Mr. Wagner did not deign to brief any legal issues, which imposed all the necessary work on WAUSA. The Court in the Maryland Action had not decided a motion relating to Mr. Wagner and was not familiar with his testimony. The brief was of equal complexity to anything that could have been filed in Maryland, and filing in this district made not one whit of difference.

        c.        <u>**Irregularities In Mr. Wagner's Filings Needlessly Increased The Time Spent.**</u>

Mr. Wagner's argument that "irregularities in filings ... were *de minimis* and were quickly rectified without prejudice" is without merit. Mr. Wagner's counsel only provided a copy of the photographs and video footage supporting the Renewed Motion for Sanctions after WAUSA's counsel repeatedly requested it. WAUSA initially had to prepare its Opposition without the benefit of a complete copy of all the exhibits to the Renewed Motion for Sanctions,

filed against it. *See* DE 11-8. While Mr. Wagner argues those images "were ... redundant with images already in Petitioner's possession", which WAUSA disputes, service was improper without a complete version of all the papers filed through the CM/ECF system. *See* LCvR 5.4(d)(1) (Electronic filing of any document operates to effect service of the document on counsel or pro se parties who have obtained CM/ECF passwords.). These and other actions required clarifications from the Clerk of Court, additional time spent by counsel in requesting those copies and figuring out what they were, and describing for the Court the inspections of Mr. Wagner's properties in detail. DE 22 at p. 10.

Ironically, Mr. Wagner has done the exact same thing in his Opposition to WAUSA's Motion and Application As To Amount Of Attorneys' Fees. Specifically, Mr. Wagner once again failed to file his Exhibit B with the CM/ECF system or otherwise provide a copy of it to WAUSA. WAUSA has not seen it to this day and had to draft and file this Reply without the benefit of a complete copy of Mr. Wagner's Opposition. Mr. Wagner is not *a pro se* plaintiff, he is represented by counsel who is admitted and practicing in this jurisdiction. These "irregularities in filings" are not *de minimis* as Mr. Wagner argues. They are as habitual as Mr. Wagner's concomitant failure to appropriately cite to legal authority, and they impact WAUSA's ability to properly respond. DE 24 at p. 9.

### d. Mr. Wagner's Failure to Meet And Confer Increased The Cost of This Matter.

Mr. Wagner completely ignores the time WAUSA had to spend due to his failure to meet, confer and narrow the issues of disagreement before filing his Motion for Sanctions, all as required by Local Civil Rule 7. As WAUSA stated in its Motion and Application, even after Mr. Saunders brought to counsel's attention that the Motion for Sanctions was procedurally and substantively flawed, and offered to allow Mr. Wagner to retract the Motion, Mr. Wagner's

counsel ignored him. DE 22 at p.10. Mr. Wagner forced WAUSA to brief the Motion and defend itself, ignoring a last clear chance to avoid all that ensued. *Id.*

### e. Mr. Wagner's Criticism Of The Time Spent On A So-Called Non "Typical" Opposition Misses The Mark.

Mr. Wagner misses the point by arguing that WAUSA somehow should have spent less time in its defense and responded with a "typical Opposition." DE 24 at p. 6. Mr. Wagner does not elaborate on what he regards as a "typical Opposition," but the stark reality is that he filed a Motion for *Sanctions* that, as Mr. Saunders stated, "required heightened scrutiny since it went beyond impacting the merits of the case and attacked the integrity of counsel …[and] … the counsel's personal and their firm's reputation in the DC legal community." DE 24-1, Saunders Decl. at ¶7(1). Mr. Wagner's argument that he "merely wanted the harassment to stop" falls short given he filed the Renewed Motion for Sanctions five months after the Court denied WAUSA's motion to compel, and after he had been deposed, and when the only remaining thing asked of him was to produce the checks he had previously failed to disclose. DE 24 at p. 7. Though the only pending issue was Mr. Wagner's compliance with the subpoena and production of the checks, Mr. Wagner instead chose to focus his energy and resources on a groundless sanctions motion against WAUSA.

## 2. WAUSA's Counsel's Rates Are Reasonable.

### a. Mr. Wagner Fails To Rebut The Presumption That WAUSA's Counsel's Rates Are Reasonable.

Mr. Wagner argues that WAUSA is not entitled to a presumption that counsel's rates are reasonable. DE 24 at pp. 5-6. The Saunders Declaration clearly sets forth the requisite showing that the rates are reasonable because it avers they are the "customary" rates charged for these attorneys and paralegals. *Electronic Transaction Sys. Corp. v. Prodigy Partner Ltd., Inc.*, 2009

WL 3273920, at *1, *2 (D.D.C. October 9, 2009). The presumption created by the Saunders Declaration was further buttressed by: (1) the proximity of the rates to those contained in the *Laffey* Matrix; (2) the National Law Journal's Annual Survey of Billing Rates as applied to billing rates in the Washington, D.C. metropolitan area; and (3) the rates approved by this Court in *Electronic Transaction*.

To rebut the presumption, Mr. Wagner provides his counsel's Declaration which speculates about unidentified "very competent attorneys in this city" who bill at the "half of the rates assigned by WAUSA." DE 24-1 at ¶7. Similar to its conclusory assertions about excessive time spent, the Rothman Declaration does not identify the purported more cost-effective attorneys are, their hourly rates, the cases they handle, whether they are of comparable skill, experience and reputation, or in any other respect, any evidence to back the conclusory assertions made. Worse, the Declaration is actually non-responsive because it does not specifically address the prevailing rate in the relevant market -- Washington, D.C.  Essentially, the Rothman declaration is irrelevant. The applicable standard in this Court is not whether somewhere in Washington D.C., some unidentified other attorney might have been found to defend against the Renewed Motion for Sanctions more inexpensively. Rather, the applicable legal standard is the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Electronic Transaction*, 2009 WL 3273920, at *1, *2.

      b.    **<u>The Evidence Overwhelmingly Establishes The Reasonableness of The Rates Sought.</u>**

Conversely, WAUSA provided details that demonstrate that Mr. Saunders' and Ms. Burlacu's rates are not only customary rates charged in the Washington, D.C. legal market, ***but***

*are lower then the rates customarily charged by Beyond Systems, Inc.'s[2] ("BSI") own attorneys -- Steptoe & Johnson, LLP.* DE 22 at pp. 2-7. Specifically, the National Law Journal Annual Survey of Billing Rates -- which Mr. Wagner did not rebut -- showed that the billing rates for Steptoe & Johnson, LLP exceed the rates here. *See* Motion and Application, Exhibit 4, DE 22-5. Specifically, Steptoe & Johnson, LLP billed at $350 to $895 per hour for partners, and at $355 per hour for third year associates. *Id.* This range is well above the rates at issue here. In fact, the rates at issue were not above the rates of ANY of the DC firms in the NLJ Survey -- not one.

Moreover, the billing rates at issue are within the *Laffey* Matrix range as well as in the range of those rates approved by this Court in *Electronic Transaction*. As detailed in the Saunders Declaration, Mr. Saunders' rate is $625 per hour and Ms. Burlacu's rate is $290 per hour. Saunders Decl. at ¶ 4. Mr. Saunders, who has more than 27 years of experience, billed at $135 per hour *less* than the senior partner and 1976 law school graduate whose hourly rate was approved by this Court in *Electronic Transaction*. DE 22 at pp. 4-5. Mr. Saunders billed at a rate just $90 more than the partner and 1997 law school graduate whose hourly rate was approved in *Electronic Transaction*, despite having 14 more years -- or more than *double* -- his experience. *Id.*

Similarly, because the pertinent hourly rate for an attorney with ten years' experience on the *Laffey* Matrix is $45 above Ms. Burlacu's $290 hourly rate, *a fortiorari*, Ms. Burlacu's hourly rate is reasonable. *Id.* at pp. 5-6. Moreover, even if experience were judged solely by years in private practice, Ms. Burlacu's $290 hourly rate is only $60 above the Laffey Matrix for an attorney with three years' experience. Further, Ms. Burlacu's hourly rate is $120 *below* the

---

[2] Beyond Systems, Inc. is the plaintiff in the underlying litigation in the District of Maryland. It is the company that filed the underlying case, and for whom Mr. Wagner purports to house computers and related equipment at his two properties. The equipment is placed in Mr. Wagner's properties in order to attempt to establish jurisdiction in Maryland to allow claims to be brought in that state. BSI is a professional spam litigant which has filed dozens of cases in various parts of the United States seeking to recover statutory damages under locally applicable laws.

2004 law school graduate whose hourly rate this Court found to be reasonable in *Electronic Transaction*.[3] Finally, although the $220 hourly rate for Mr. Przygrodzki is $85 above the Laffey Matrix, it is well within the range of the paralegals and researchers in *Electronic Transaction* who billed within the range of $175 to $260 per hour. *Id.*, at p. 6.

Thus, these rates are facially reasonable in this district. *See Electronic Transaction*, 2009 WL 3273920, at *1, *2 ("This Circuit holds that "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" (*quoting Woodland v. Viacom*, 255 F.R.D. 278, 280-81 (D.D.C. 2008)). This presumption exists because "'the rate that [a firm] charges its clients is the market rate.'" *Id.*, at *2 (*quoting Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)).

### c.  Mr. Wagner Fails To Distinguish *Electronic Transaction*.

Mr. Wagner tries to portrays this Court's decision in *Electronic* Transaction as one where no evidence was presented to rebut the presumption. His effort is misplaced. Therein, this Court independently reviewed reasonableness of the work performed and the record. Indeed, *Electronic Transaction* is directly on point.

As in *Electronic Transaction*, Mr. Wagner has failed to present *any* evidence whatsoever regarding the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at *2. The Rothman Declaration muses that there are some unspecified attorneys who may perform such services at a lower hourly rate, but

---

[3] The reasonableness of Ms. Burlacu's hourly rate is even more pronounced when compared with the hourly rates charged for her peer group (based on years of private practice of domestic law). DE 22 at p.9. Hogan & Hartson, based in Washington, D.C., bills out third year associates at $360 per hour. *Id.* Dickstein Shapiro bills out third year associates at $350 to $395 per hour. *Id.* Steptoe & Johnson, LLP bills out third year associates at $355 per hour. *Id.*, p. S-6. Patton Boggs bills out third year associates at $350 per hour. *Id.*

does not address whether any such rate was "prevailing in the community"; (2) whether it was for "similar services," or (3) who the lawyers are, and consequently whether they were of "reasonably comparable skill, experience, and reputation." *Id.* at \*2. As in *Electronic Transaction*, Mr. Wagner failed "to present evidence showing that" Mr. Saunders "was untruthful in his Affidavit" when he stated that the rates charged were the "customary rates." *See id* at \*2. Accordingly, Mr. Wagner's attempt to distinguish *Electronic Transaction* is meritless, and *Electronic Transaction* fully supports WAUSA's Motion and Application for attorneys' fees.

### d. WAUSA Is Not Required To Hire Other Counsel.

Further, Mr. Wagner is disingenuous by implying that WAUSA should have hired other counsel than the counsel acting on its behalf in the underlying litigation in Maryland District Court for more than two years. Rothman Decl. at ¶7. Mr. Rothman himself not only appears both here and in the underlying litigation; he represents two distinct parties, BSI and Mr. Wagner. WAUSA, which is defending itself against BSI for a claim for an amount exceeding one hundred million dollars, is similarly entitled to have the assistance of counsel familiar with the underlying litigation.

### 3. The Lodestar Method Does Not Apply To WAUSA's Representation

Mr. Wagner next argues that "the Court has failed[4] to consider the Federal Lodestar Rate as an alternative source of what a reasonable hourly fee for attorney's fees would be[sic]". DE 24 at pp. 6, 8. First, Mr. Wagner again - and consistent with his established practice in this Court - failed to cite to any legal authority for his proposition that the Lodestar method should be used

---

[4] WAUSA is unclear why Mr. Wagner twice makes a declarative statement that the Court has failed to consider the Federal Lodestar Rate when the matter is still being briefed, and the Court has not yet ruled on any fee amount.

in this case or what would be the reasonable hourly rate or the total amount of fees under the lodestar. *Id.* WAUSA, by contrast, has provided the case law that establishes the controlling standard in this district.

In any event, the Lodestar approach is inapposite under the present circumstances. Specifically, the Lodestar approach produces an award that approximates the fee the prevailing attorney would have received for representing a paying client who was billed by the hour in a comparable case. *See Burlington v. Dague*, 505 U.S. 557, 566 (1992). The Supreme Court stated that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of [the] *fee-shifting jurisprudence*." *Perdue v. Kenny*, 130 S.Ct. 1662, 1672 (2010) (emphasis added). It involves multiplying the number of hours reasonably expanded by a reasonable hourly rate. *See Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C.Cir. 1984). The former is determined by considering the total number of hours expended and disallowing unproductive time; the latter is determined by reference to the prevailing market rate in the relevant community. *Id.* The majority of the cases where the courts used this method involved *quantum meruit* claims[5] in contingency anti-trust cases, Title VII class actions, or other cases involving cost-shifting statutes. *See Smith v. District of Columbia*, 2005 WL 914773, at *1 (D.D.C. April 18, 2005); *Envt'l. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993); *Jordan v. Dep't of Justice*,

---

[5] In the District of Columbia, valuation of a lawyer's professional litigation services in *quantum meruit* is by one of two methods: computation of an hourly rate times the number of hours reasonably invested in the case (adjusted, in appropriate cases, by a "lodestar" factor), or "based on the result of the litigation." *Ginberg v. Tauber*, 678 A.2d 543, 552 (D.C. 1996). The latter is disfavored, unless the attorney seeking such a fee "has obtained the client's agreement to that arrangement at the beginning of the representation." *Id.* A *quantum meruit* plaintiff must prove and combine the applicable factors to establish the value of her professional services: the units of measure of her compensation (*i.e.*, her hours), and the fee per unit (her hourly rate). The D.C. Court of Appeals assigned this burden unequivocally to the plaintiff in *Jonathan Woodner Co. v. Laufer*, 531 A.2d 280, 287 (D.C. 1987) (the Court dismissed the case of a *quantum meruit* proponent who provided no evidence of the market value of his services). The plaintiff must come forward with competent evidence of both the value of her time, and the number of hours reasonably charged. *See Sastry v. Coale*, 585 A.2d 1324, 1329 (D.C. 1990). Damages may not be based on mere speculation or guesswork; rather, there must be "some reasonable basis on which to estimate [them]." *Id.*, citing *Cahn v. Antioch Univ.*, 482 A.2d 120, 130 (D.C. 1984).

691 F.2d 514 (D.C. Cir. 1982); *New York v. Microsoft Corp.*, 297 F. Supp. 2d 15 (D.D.C. 2003); *Donovan v. Local 6, Wash. Teachers Un.*, 665 F. Supp. 1 (D.D.C. 1986).

WAUSA provided evidence demonstrating it had an hourly fixed fee arrangement with its attorneys. DE 22 at pp. 10. WAUSA has submitted a Chart detailing exactly what the attorneys did for each hour or portion thereof for which recovery is sought and redacted photocopies of the bills for the work performed reflecting the actual timekeepers, task descriptions, hours or portions of hours, and sub-totals for time worked. *Id.*, Exhibits 5 and 6. The Lodestar method is inapplicable. Moreover, under the Lodestar method -- multiplying the number of hours reasonably expanded by a reasonable hourly rate -- WAUSA should be entitled to a larger amount of fees because as was demonstrated in its Application and also above, its counsel's rate is actually lower then the customary rates billed in this district, including by the plaintiff, BSI's, own attorneys.

### B. WAUSA EXERCISED "BILLING JUDGMENT" AND ITS JUNIOR COUNSEL'S TIME COMPRISES 70% OF THE TOTAL AMOUNT OF TIME BILLED

Mr. Wagner disputes that "WAUSA exercised the requisite 'billing judgment'." DE 24 at pp. 9-10. Further, Mr. Wagner states that WAUSA "assigned the relatively simple task of briefing its case to the highest-billing counsel" and the "senior counsel's time dominat[ed] that of the junior members of the team, where the task was more suitable for a paralegal." *Id.* at p. 10. Mr. Wagner either misreads or misrepresents the record. The Saunders Declaration and WAUSA's Application clearly identify an associate, Ms. Burlacu, and a paralegal, Mr. Przygrodzki, performed the overwhelming majority of relevant services. DE 22 at p. 10; Saunders Declaration, ¶ 7(2). Mr. Saunders spent 13 hours while Ms. Burlacu spent 39 hours on this matter, and Mr. Przygrodzki, spent 3.2 hours. Regardless of the method used, Mr. Saunders'

24% does not "dominate" the time spent on the matter. *Id.*

Additionally, as stated in the Motion and Application for fees, WAUSA reduced the individual entries for these bills to exclude work performed on other unrelated tasks, has reduced the overall bill for these entries, and included only two attorneys in its submission although its defense team is larger. DE 22 at pp. 11-12. Therefore, WAUSA has exercised the requisite "billing judgment" and its fees are presumptively reasonable.[6]

## II. CONCLUSION

For the above stated reasons, WORLD AVENUE USA, LLC respectfully requests the Court to grant its Motion and Application as to the Amount of Attorneys' Fees and enter a Final Order awarding $20,667.40 in attorneys' fees against Respondent WILLIAM J. WAGNER, to be paid in 14 days, with interest accruing at the statutory rate under 28 U.S.C. § 1961(a) on all unpaid amounts until the same are paid, and for such other and further relief as this Court deems just and appropriate. WORLD AVENUE USA, LLC further requests a Supplemental Award of Attorneys' Fees and Costs incurred in litigating WILLIAM J. WAGNER's Objection to the Magistrate's Award (and in effect having to litigate for the second time entitlement to such an award), particularly given the repetitive failure to cite to applicable legal authority, to be fully candid with the Court as to all underlying facts, or even to provide WAUSA with all the exhibits provided to the Court.

---

[6] Mr. Wagner also tries to defend against an award of attorneys' fees by blaming WAUSA for "scorched earth" litigation tactics in a case to which Mr. Wagner is not a party. Mr. Wagner's argument is a red herring made by a litigant who lacks any valid legal basis to contest the imposition of attorneys' fees. Mr. Wagner's argument bears no relationship to the issue of reasonableness of the attorneys' fees incurred and time spent in defending the Renewed Motion for Sanctions Mr. Wagner chose to file. Nor, and perhaps even more significantly, does it address one of the chief issues of concern to Magistrate Judge Kay, which was Mr. Wagner's failure to explain his own misbehavior.

Dated: September 7, 2010

        Respectfully submitted,
        *Attorney for World Avenue USA, LLC*

        GREENBERG TRAURIG, LLP

        _____/s/_____
        Sanford M. Saunders, Jr., Esq.
        saunderss@gtlaw.com
        GREENBERG TRAURIG, LLP
        2101 L Street, NW, Suite 1000
        Washington, DC 20037
        Telephone: 202-331-3100
        Facsimile: 202-331-3101